UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL SIPP, III, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-360** |
| **OFFICER JASON GIROIR, ET AL.** | **SECTION: "C"(1)** |

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendant Jason Giroir. Rec. Doc. 57. Plaintiffs have submitted an opposition. Rec. Doc. 59. Having reviewed the record, the law, and the memorandums submitted from all parties, the Court hereby GRANTS the motion for the reasons that follow.

This suit was instituted by Earl Sipp, III and his father Earl Sipp, Jr., ("Plaintiffs") both individually and on behalf of the deceased, Justin Sipp, their son and brother, respectively. Specifically, Plaintiffs' claims are as follows:

> (1) "Count I - § 1983 Causes of Action" : Plaintiffs claim Defendants Giroir, the New Orleans Police Department ("NOPD") and its officers violated Plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution for "falsely stopp[ing], detain[ing], assault[ing], batter[ing] and kill[ing] Justin Sipp, and injur[ing] Early Sipp, III," and using "unlawful force against Justin and Earl Sipp, III," thereby violating their "federal constitutional and federal civil rights." Rec. Doc. 1 at 16.
>
> (2) "Count II - Enumerated § 1983 Violations" : Plaintiffs' second claim alleges all Defendants denied Justin Sipp and Earl Sipp, III the "rights, privileges, and immunities secured by the United States Constitution and by Federal Law." *Id.* at 17. The complaint specifies that the Plantiffs' claim "unlawful use of deadly force,

1

assault and battery by defendant NOPD officers under the NOPD's control," that resulted in Justin Sipp and Earl Sipp, III being deprived "of both their liberty without due process of law and [their] right to equal protection of the laws." *Id.*

(3) "Count III - § 1983 Conspiracy Cause of Action": Plaintiffs' allege all defendants "acted in combination and in concert" in a "conspiracy to commit illegal acts against Justin and Earl Sipp, III." Rec. Doc. 1 at 18. This claim alleges that the New Orleans Police Department, its officers and Superintendent Ronal Serpas exercised "deliberate indifference in not preventing these acts" and were acting in concert and conspiracy by allowing and failing to prevent the "unlawful acts." *Id.*

(4) "Count IV - § 1983 Liability of NOPD, Officers and His Office": In Plaintiffs' fourth claim they allege that Superintendent Serpas and NOPD violated Plaintiffs' rights by "fail[ing] to adopt sufficient policies to deter or prevent" civil rights violations and failing to "develop and/or maintain a custom or policy to identify, discipline, rehabilitate and/or retrain its police officers" who violated individuals civil rights. Rec. Doc. 1 at 19. In addition, Plaintiffs' allege Defendants negligently hire and retained police officers who had previously violated criminal suspects' civil rights. *Id.*

(5) "Count VI[1] - Due Process and Equal Protection Violations": Plaintiffs allege in their fifth claim that Earl Sipp, III and Justin Sipp's rights to due process and equal protection were violated by the NOPD and NOPD officers' illegal stop and arrest. Rec. Doc. 1 at 21. In addition, Plaintiffs allege Earl Sipp, III was falsely charged and denied a good faith prosecution and his right to a fair trial. *Id.*

(6) "Count VIII[2] - State Law Claims": Plaintiffs' sixth claim entails their state law claims. Specifically, Plaintiffs allege Defendants "knowingly and intentionally, or in the alternative negligently" violated Justin Sipp and Earl Sipp, III's rights under the Louisiana Constitution to due process of law, right to individual dignity, right to privacy, right to judicial review, right to human treatment and access to courts. *Id.* Additionally, Plaintiffs' allege violations of state laws for battery, assault, intimidation by officers, kidnaping, false imprisonment, extortion, liability for acts causing damages, negligence, *respondeat superior* liability, solidary liability for conspiracy, abuse of process and negligent misinformation.[3] *Id.*

---

[1]Plaintiffs' Complaint does not have a "Count V." The complaint goes from "Count IV" to "Count VI." Rec. Doc. 1 at 18-21.

[2]Plaintiffs' Complaint does not have a "Count VII." The complaint goes from "Count VI" to "Count VIII." Rec. Doc. 1 at 21.

[3]Plaintiffs cite the following specific state statutes: La R.S. 14:33, *et seq*, La. R.S. 14:36, *et seq.*, La. R.S. 14:40, *et seq.*, La. R.S. 14:44, *et seq.*, La. R.S. 14:46, *et seq.*, La. R.S. 14:66, La.

Defendants Ronal Serpas and City of New Orleans previously filed a Motion for Summary Judgment which was unopposed and granted on June 12, 2014, resulting in the dismissal of the claims against those defendants and claim (4) in its entirety. (Rec. Docs. 24, 46). Consequently, the only remaining claims are (1), (2), (3), (5) and (6). Jason Giroir is the only defendant remaining in the case and has filed a Motion for Summary Judgment which is currently before the Court. (Rec. Doc. 57). Giroir has incorporated arguments from the previously-granted Motion for Summary Judgment by way of reference in is own Motion. Rec. Doc. 57-1 at 6. At this time, adequate time has been provided for discovery, however there has been no indication that any depositions have been taken.

## I. Background

The undisputed facts establish that this suit arises out of a traffic stop by Defendant Jason Giroir, formerly of the New Orleans Police Department, of a vehicle driven by Plaintiff Earl Sipp III and containing as a passenger, his brother Justin Sipp. On the morning of March 1, 2012, at approximately 5:35 a.m., Earl Sipp III and Justin Sipp were stopped by Defendant Giroir. Rec. Doc. 57-4. While working a paid detail for the Mid-City Security District, Giroir was traveling riverbound on Canal Street in a marked police vehicle when he observed the Sipps' vehicle traveling northbound on Canal Street. Rec. Doc. 57-4 at 4. Giroir was able to see the vehicle had a broken license plate light, which is a violation of La. R.S. 32:304(c). *Id.* New Orleans Police Officer Nicholas L. Gernon's affidavit verifies that the license plate was not illuminated at the time of the incident. Rec. Doc. 24-4 at 1. Giroir made a u-turn with his vehicle so as to begin following the Sipps' vehicle and make a traffic stop. *Id.* at 5.

---

C.C. art. 2315, 2316, 2317, 2320 and 2324.

Earl Sipp, III and Justin Sipp were traveling to early morning shifts at local fast food restaurants. Rec. Doc. 1 at 7-8. Earl Sipp, III was driving the vehicle to drop Justin Sipp off at his place of employment on City Park Avenue. *Id.* Giroir, in his marked police vehicle, followed plaintiffs northbound on Canal to St. Patrick Street. Rec. Doc. 57-4 at 4 and Rec. Doc. 1 at 7. Once on St. Patrick Street, Giroir continued to follow the Sipps as they turned on to St. Louis Street and then N. Bernadotte Street, which has access to the back of the restaurant where Justin worked. Rec. Doc. 1 at 7-8 and Rec. Doc. 57-4 at 6. Once on N. Bernadotte Street, the Sipps' vehicle had pulled over to park and Giroir activated his vehicle's emergency lights as he came up behind the parked vehicle. Rec. Doc. 57-4 at 6 and Rec. Doc. 1 at 33.

Giroir approached the Sipps' vehicle and asked for Earl Sipp, III's license, registration and insurance. Rec. Doc. 57-4 at 7 and Rec. Doc. 1 at 8. Giroir returned to his vehicle to check the driver's information and the vehicle's license. Rec. Doc. 57-4 at 7. Earl Sipp, III's license had been suspended and there was an outstanding traffic attachment. Rec. Doc. 24-4 at 2. Giroir alleges that Justin Sipp had claimed to not have any identification on his person and then proceeded to give him a fake name and date of birth. Rec. Doc. 57-4 at 7. Officer Gernon's investigation of the incident revealed that at the time of the incident, there was an outstanding warrant for Justin Sipp's arrest. Rec. Doc. 24-4 at 3.

At some point during the traffic stop, Giroir radioed for the assistance of Officers Mayfield and Asevedo to assist with the traffic stop. Rec. Doc. 57-4 at 8. Once Officers Mayfield and Asevedo arrived at the scene, Defendant Giroir placed Earl Sipp, III under arrest and handcuffed him. *Id.* at 9. Officer Mayfield was attempting to remove Justin Sipp from the vehicle and was facing resistance. *Id.* at 8 As Defendant Giroir was attempting to handcuff Justin Sipp, Justin Sipp began

4

to physically resist and caused Giroir to fall to the ground. *Id.* As he was on the ground, rapid gunfire began and Giroir could see Justin Sipp with a gun. *Id.* Officers Mayfield and Asevedo, were shot, but conscious and lying on the ground as Giroir radioed for assistance. *Id.* Earl Sipp, III had been shot in the leg and was still conscious. *Id.* Justin Sipp had been shot and killed. *Id.* Giroir had been shot as well, but his TASER weapon stopped the bullet. Rec. Doc. 24-4

The ballistics report submitted by Defendant Giroir as an exhibit to his motion shows that Justin Sipp fired fourteen .380 caliber rounds, Officer Mayfield fired six .40 caliber rounds and Officer Giroir filed one .40 caliber round. Rec. Doc. 57-5. However, the analysis was unable to determine which rounds struck the Sipps. *Id.*

**II. Analysis**

    **A. Rule 56 Motion for Summary Judgment**

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324, 106 S.Ct. at 2253.

A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1996). "[U]nsubstantiated assertions" and "conclusory allegations" will

not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir.1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871–73, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir.2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

Defendant Giroir's Motion for Summary Judgment includes his affidavit, transcript of his statement to the investigating officers, and the forensic ballistics report. Rec. Docs. 57-4 and 57-5. In addition, he has incorporated the supporting evidence, including the affidavit of NOPD officer Nicholas Gernon, previously submitted with the City's Motion for Summary Judgment, by way of reference. Rec. Doc. 24-4 and Rec. Doc. 57-1 at 10. Plaintiffs have failed to submit any evidence cognizable under a Rule 56 motion in order to "designate specific facts showing there is a genuine issue for trial."*Celotex*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). Neither have Plaintiffs identified specific evidence already in the record to counter the motion or support their claims.

### B. Plaintiffs' Claims Against Defendant Giroir Under § 1983

The primary statute to bring constitutional claims against local governments and officials is 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance,

6

regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983. For a claim under § 1983 to be successful, two essential elements must be met: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 1010 S.Ct. 1908 (1981) (overruled in part on other grounds by *Daniel v. Williams*, 474 U.S. 327, 330-331 (1986)).

The first element has been satisfied in this case. Defendant Giroir has not contested that he was at all times acting in the course and scope of his employment with the NOPD and under color of state law. Rec Doc. 57-1 at 7. While he was working a paid detail at the time of the incident, Giroir's on-duty or off-duty status is not the deciding factor as to whether he was acting under color of state law. *United States v. Tarpley*, 945 F.2d 806 809 (5th Cir. 1991). The analysis requires the court to consider: (1) whether the officer 'misuse[d] or abuse[d] his official power,' and (2) <u>if 'there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties.'</u>" *Bustos v. Martini Club, Inc.*, 599 F.3d. 458, 464 (5th Cir. 2010) *quoting Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)(emphasis added). Defendant Giroir was in a marked NOPD vehicle making a traffic stop for a visible violation of state law. Defendant Giroir was acting under color of state law for purposes of this element.

The second element of a § 1983 analysis is whether the defendant's conduct deprived the plaintiffs of rights, privileges or immunities and is the crux of Plaintiffs' claims. The parties appear

to agree that Plaintiffs' claims under 42 U.S.C. § 1983 can be divided into two categories for analysis: (1) claims of excessive force; and (2) claims of an unauthorized seizure. Claims for false stops and arrests fall under the unauthorized seizure analysis, while Plaintiffs' claims of assault, battery, and unlawful use of deadly force are analyzed under an excessive force framework. Defendant Giroir claims qualified immunity with regard to both sets of claims.

### 1. Qualified Immunity: Excessive Force Claims

Giroir claims entitlement to qualified immunity with regard to the excessive force claims under § 1983. Qualified immunity protects officers charged with discretionary duties from suit unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

In *Katz v. Saucier*, 553 U.S. 194, 201 (2001), the Supreme Court refined its earlier *Harlow* ruling and set forth a two-pronged analysis to determine the propriety of qualified immunity in the context of allegations of excessive use of force. An officer is barred from qualified immunity if: (1) there is a violation of a clearly established constitutional right, and (2) the reasonable officer would be aware that his conduct was unlawful in the situation he confronted. See *Katz*, 553 U.S. at 207–208. After *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), a court may consider these prongs in either order when qualified immunity is raised.

The effect of qualified immunity is to grant officers immunity from reasonable mistakes as to the legality of their actions. *Katz,* 553 U.S. at 206. It should be further emphasized that qualified

immunity is in addition to the deference already owed the officer on the underlying constitutional claim, for instance in allowing wide latitude for officer safety or to guard against potential flight. *Id.* The objective reasonableness standard as applicable here is "intended to provide government officials with ability reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted). The objective reasonableness standard "provides ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Excessive force claims implicate the right to be free from unreasonable seizure under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 393–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Excessive force claims are "separate and distinct from" unlawful arrest claims and are analyzed therefore without consideration of whether the arrest was justified. *Freeman v. Gore,* 483 F.3d 404, 413 (5th Cir. 2007). Claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham,* 490 U.S. at 394.

To prove a violation of the Fourth Amendment right to be free from the use of excessive force, a plaintiff must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir.2011) (quoting *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 233 (5th Cir.2009)). The reasonableness of particular force is a fact sensitive question and must be judged from the perspective of a reasonable officer under the circumstances, rather than with 20/20 hindsight. *Graham*, 490 U.S. at 396.

Under a standard of objective reasonableness, the Court will determine whether a reasonable police officer would have used a similar degree of force in light of the particular facts and circumstances the officer confronted at the time of the incident. *Id.* When gauging the reasonableness of an officer's actions, the Court should consider the following factors: 1) the severity of the crime at issue, 2) whether the suspect posed an immediate threat to the safety of the officers or others, 3) and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id*. "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Rockwell*, 664 F.3d at 991 (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009)). Conversely, "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.... Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985).

The Court finds that Giroir is entitled to qualified immunity in regards to the excessive force claim. Justin Sipp had given Giroir a false identity during the traffic stop and was actively resisting the officers' instructions to step out of the vehicle. He had knocked Defendant Giroir to the ground as a result of his resistance, and had begun firing his weapon at all three officers. The ballistics report shows that Justin Sipp fired fourteen rounds at the officers. Justin Sipp's actions made him an immediate threat to the safety of all three officers on the scene. The ballistics report also confirms that Giroir discharged his weapon only once and the analysis was inconclusive as to whether his one shot hit Justin Sipp or Earl Sipp, III. The undisputed evidence submitted by Defendant Giroir shows

his response was not objectively unreasonable to the situation that arose from Justin Sipp's resistance and shooting.

Plaintiffs attempt to overcome Defendant Giroir's defense of qualified immunity by arguing that Defendant Giroir has a history of a racially biased use of excessive force. Rec. Doc. 59 at 3. Further, Plaintiffs argue that a settlement by the City in *Jonie Pratt, et al v. Officer Jason Giroir*, United States District Court for the Eastern District of Louisiana, Case No. 07-1529 "A", is evidence of Defendant Giroir's "history of [racial] profiling" and his use of excessive force against New Orleans' African-American community. *Id.* at 4**.** In the *Pratt* case, Defendant Giroir was accused of violating Ms. Pratt's civil rights during a traffic stop in her own driveway by physically assaulting her, and spraying her with pepper spray, among other allegations. Rec. Doc. 1, Case No. 07-1529 "A". The *Pratt* case was settled prior to trial and there is no indication what the settlement terms included. Rec. Doc. 42, Case No. 07-1529 "A". Therefore, that settlement does not constitute proof that Giroir admitted to any culpability.

A qualified immunity analysis is a objective inquiry however, and a defense of qualified immunity cannot be rebutted with evidence that the defendant's conduct was malicious or improperly motivated because evidence of the defendant's subjective intent is irrelevant to the defense. *Crawford-El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed. 2d 759 (1998). The Supreme Court even noted in *Graham* that "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." 490 U.S. at 397. Any allegation that Defendant Giroir acted out of racial animus in his treatment of Earl Sipp, III and Justin Sipp, even if it the allegation was proven, is misplaced in an attempt to overcome a qualified immunity defense to an excessive force claim when the use of force was objectively reasonable.

11

The undisputed evidence and affidavits submitted support the finding that Giroir acted with reasonable force under the circumstances and is entitled to qualified immunity in regards to the excessive force claims. Plaintiffs' claims of excessive force against Defendant Giroir are subject to dismissal.

### 2. Qualified immunity: Unauthorized Seizure Claims

Plantiffs' also claim Earl Sipp, III and Justin Sipp were falsely stopped and detained by Defendant Giroir. Rec. Doc. 1 at 18. Plaintiffs allege that Earl Sipp III and Justin Sipp were subjects of an unauthorized seizure when they were stopped for an allegedly disingenuous and pretextual traffic violation. Giroir claims qualified immunity for the unauthorized seizure claims brought under § 1983.

A seizure occurs when government actors have "by means of physical force or show of authority" restrain the liberty of a citizen. *Terry v. Ohio*, 88 S.Ct. 1868, 1879 n.16 (1968). The Supreme Court has held that for claims based on the restrain of a free citizen's liberty, the proper analysis is under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989). *See also Saucier v. Katz*, 121 S.Ct. 2151, 5128 (2001).

The analysis for whether a traffic stop constitutes a violation of a person's Fourth Amendment rights considers (1) "whether the officer's action was justified in its inception"; and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Under *Terry*, "once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion" to justify continuing the detention. *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). See also *Brigham*, 382 F.3d at 507.

The affidavit of NOPD Officer Nicholas Gernon establishes that the vehicle driven by Earl Sipp, III was not in compliance with La. R.S. 32:304(C). Rec. Doc. 24-4 at 2. This statute requires "either a tail lamp or a separate lamp" to be placed or constructed in such a manner "as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear." La. R.S. 32:304(C). According to Officer Gernon's affidavit, his review of the video surveillance and still photographs of the vehicle show the license was not illuminated and this violation was present when Giroir made the traffic stop. Again, Plaintiffs produce no evidence that would raise a genuine issue as to this fact. For purposes of summary judgment, probable cause for the stop was present.

Plaintiffs argue that the ticket issued to Earl Sipp, III for the violation of La. R.S. 32:304(C) was ultimately dismissed by the Traffic Court for the City of New Orleans and therefore the issue of probable cause for the traffic stop is a matter of *res judicata.* Rec. Doc. 1 at 2 and Rec. Doc. 59 at 3. Plaintiffs' allege the reason for the dismissal was the failure of the officer, Defendant Giroir, to appear at the six different trial settings. Rec. Doc. 1 at 2. Plaintiffs do not cite any legal authority for this novel *res judicata* argument. Additionally, case law holds that the probable cause analysis is not dependant on "whether the charges are defensible, but rather on whether the arresting officers had probable cause." *Lockett v. New Orleans City*, 639 F. Supp. 2d 710, 725 (E.D. La. 2009) citing *Baker v. McCollan,* 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L.Ed. 2d 433 (1979). The undisputed evidence submitted shows there was an objectively reasonable, probable cause basis for the traffic stop. Once stopped, Defendant Giroir proceeded to check the information given him by the driver. It also appears that Earl Sipp, III was not arrested for the traffic violation that precipitated the stop, but rather for an outstanding traffic attachment and driving with a suspended license that was

13

discovered subsequent to the stop. Without any legal authority to support their allegation, this Court rejects Plaintiffs' argument that the probable cause issue is a matter of *res judicata*.

The Court finds that the Plaintiffs' claims for an unauthorized seizure against Giroir under Section 1983 and state law are subject to dismissal based on the pleadings and Defendant Giroir is entitled to qualified immunity on the unauthorized seizure claims.

### C. Wrongful Death Claims by Earl Sipp, III

Defendant argues that plaintiff Earl Sipp, III has failed allege or show that he has the capacity to bring the present action insofar as his father is currently pursuing the same action. Pursuant to 42 U.S.C. § 1988, the state wrongful death statute determines who has capacity to bring a wrongful death claim under § 1983. *Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir.2000). Louisiana Civil Code article 2315.2 controls capacity to sue in wrongful death actions, and La. Civ. Code art. 2315.1 controls capacity to bring survival actions. Both statutes create a hierarchy of classes of beneficiaries. The statutes first allow "surviving spouse and child or children of the deceased, or either the spouse or the child or children" the right to being suit to recover damages. La. Civ. Code art. 2315.2. The next class of beneficiaries includes "the surviving father and mother of the deceased, or either of them if he left no spouse or child surviving." *Id.* Justin Sipp's father, Earl Sipp, Jr. is the only plaintiff with the capacity to sue on Justin Sipp's behalf. Earl Sipp, III has no cause of action to sue on behalf of his late brother Justin Sipp. Defendant Giroir is entitled to summary judgment as to the wrongful death claims by Earl Sipp, III.

### D. 42 U.S.C. § 1983 Conspiracy Claims

Plaintiffs' third claim is entitled "§1983 Conspiracy Cause of Action." Rec. Doc. 1 at 18. However, the statute giving rise to a claim for a conspiracy to deny a person rights or privileges is

14

42 U.S.C. § 1985(3). To state a claim under 42 U.S.C. § 1985, the plaintiff must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994). In addition, the plaintiff must also prove "a discriminatory animus based on race or some other inherited or immutable class characteristic such as gender, religion, or national origin or based upon political association or beliefs." *Sullivan v. County of Hunt, Tex.*, 106 Fed. Appx. 215, 220 (5th Cir. 2004).

Here, Plaintiffs do not identify or describe a viable second conspirator. In addition, a conspiracy under this section requires two or more persons and a "corporation cannot conspire with itself any more than a private individual can." *Id.* Members of the same governmental entity, under the intracorporate conspiracy doctrine, cannot constitute a conspiracy for purposes of § 1985. *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir. 1994). At the time the conspiracy is alleged to have occurred, Defendant Giroir was a member of NOPD and as such cannot have had a conspiracy with other NOPD members. Plaintiffs' claim for conspiracy must be dismissed.

### E. State Law Claims

Plaintiffs also bring several claims under Louisiana state law. Rec. Doc. 1. However, having granted summary judgment dismissing Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. Under 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Therefore, those claims will be

dismissed without prejudice.

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment filed by Jason Giroir is GRANTED as it relates to all federal claims. Rec. Doc. 57. The remaining state law claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 23rd day of March, 2015

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE